IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FOSTER REAL ESTATE HOLDINGS, LLC, | ) |
| Plaintiff, | ) |
| v. | ) NO. 3:21-cv-00135 |
| THE PHOENIX INSURANCE COMPANY, | ) JUDGE CAMPBELL |
| | ) MAGISTRATE JUDGE HOLMES |
| Defendant. | ) |

## **MEMORANDUM**

Pending before the Court is Defendant The Phoenix Insurance Company's ("Phoenix") motion for summary judgment (Doc. No. 58), which is fully briefed. (Doc. Nos. 67, 70). For the reasons discussed below, Phoenix's motion will be **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Starting in November 2014, Plaintiff Foster Real Estate Holdings, LLC ("Foster") owned the commercial property at issue in this action located at 515 Foster Street, Nashville, Tennessee 37207 (the "Insured Premises"). (Doc. No. 38-1 ¶¶ 3-4). Phoenix insured Foster pursuant to a policy of insurance No. YN630 –1H128830 (the "Policy") with effective dates of April 10, 2018 to April 10, 2019. (Doc. No. 9-1). The Policy provided insurance coverage to the buildings located on the Insured Premises for "direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss." (*Id.*). On June 15, 2018, a wind and hailstorm event struck the Insured Premises, resulting in property damages (the "Loss"). (Doc. No. 68 ¶ 1).

On January 8, 2019, Foster reported the Loss to Phoenix along with an initial statement of loss in the amount of $765,902.85. (Doc. No. 68 ¶¶ 1- 2). Phoenix inspected the Insured Premises in January and February 2019, and it's consulting structural engineer issued a report of his findings

and repair recommendations on March 22, 2019. (Doc. No. 60-1 at 1). Based on its structural engineer's report and recommendations, Phoenix prepared an estimate in the amount of $110,003.58, and issued a payment for the actual cash value of the loss in the amount of $76,597.25. (*Id*.). In April 2019, to comply with *Lammert v. Auto-Owners (Mutual) Ins. Co.*, 572 S.W.3d 170 (2019), Phoenix issued an additional payment for the actual cash value of the loss in the amount of $15,668.89. (*Id*. at 2).

On August 14, 2019, Foster sold the Insured Premises. (Doc. No. 38-1 ¶ 4). In September 2019, Foster submitted a "Sworn statement in Proof of Loss" to Phoenix in the amount of $2,829.599.82. (Doc. No. 10 ¶ 17). Upon receipt of the foregoing, Phoenix conducted another inspection of the Insured Premises on October 22, 2019, and its structural engineer prepared a supplemental report on November 19, 2019. (Doc. No. 60-1 at 3). In late 2019, based on its structural engineer's supplemental report, Phoenix increased its estimate of the amount of the loss to $476,699.21. (Doc. No. 10 ¶ 18; Doc. No. 60-1 at 3). On or around January 6, 2020, Phoenix issued a supplemental payment in the amount of $373,714.01. (Doc. No. 60-1 at 3). On January 20, 2020, Foster emailed Phoenix that it disagreed with Phoenix's revised estimate. (*Id*. at 3-4). Phoenix reinspected the Insured Premises on February 7, 2020, and its retained consultant prepared an independent repair estimate reflecting an amount of loss totaling 633,092.37. (*Id*. at 4; Doc. No. 10 ¶ 19). On March 19, 2020, based on its consultant's repair estimate, Phoenix issued a supplemental payment in the amount of $156,187.30. (*Id*.).

On April 3, 2020, Foster wrote to Phoenix demanding an appraisal because of a disagreement about the amount of loss. (Doc. No. 10 ¶ 28; Doc. No. 67-1 at PageID # 1505). Phoenix refused to participate in the appraisal process based on its contentions that: (1) Foster had

2

been fully indemnified for the loss by its sale of the Insured Premises and (2) that there was no *bona fide* disagreement about the amount of loss. (Doc. No. 68 ¶ 3).

Foster filed the present action in the Chancery Court for Davidson County, Tennessee, on January 8, 2021. (Doc. No. 1-1). In its complaint, Foster asserts three causes of action against Phoenix: (1) breach of contract for Phoenix's "failure and refusal to pay the amounts owed to [Foster] for the Loss pursuant to the insurance coverage afforded by the Policy" and its "refus[al] to comply with the Policy's appraisal clause after proper demand by Plaintiff" (*Id*. at ¶ 40); (2) declaratory judgment requesting, in part, "that the Court declare that [Phoenix] is obligated to appoint an appraiser and proceed with appraisal to determine the amount of the loss to the Insured Premises associated with the Loss" (*Id*. at ¶ 47); and (3) statutory bad faith based on Phoenix's improper, bad-faith claims handling practices (*Id*. at ¶¶ 48-51). Phoenix removed the action to this Court on February 22, 2021. (Doc. No. 1). In its answer, Phoenix raises seven affirmative defenses, including that (1) Foster has been fully indemnified, and (2) Foster waived its right to appraisal. (Doc. No. 10 at PageID # 292-295). On March 4, 2022, Phoenix moved for summary judgment on its first two affirmative defenses and on Foster's claims for breach of contract, declaratory judgment, and statutory bad faith. (Doc. No. 58).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element

3

of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

**A. Affirmative Defenses**

1. <u>First Affirmative Defense</u>

Phoenix moves for summary judgment on its first affirmative defense that Foster has been fully indemnified under the Policy for the Loss by virtue of its sale of the Insured Property and receipt of Phoenix's Actual Cash Value payments. (*See* Doc. No. 59 at 7-14; Doc. No. 10 at PageID # 293-294). According to Phoenix, its first affirmative defense is "based on the broad evidence rule set forth by the Tennessee Supreme Court's decision in *Braddock* and the principles of indemnity." (Doc. No. 59 at 19 (citing *id.* at Section V (A)(1)). For the reasons discussed below, Phoenix's first affirmative defense fails as a matter of law.

As to the broad evidence rule, Phoenix argues the Court "must" consider the circumstances surrounding the sale of the property for determining the amount of loss "pursuant to the Tennessee Supreme Court's holding in *Braddock*… that '[w]hat constitutes actual cash value… depends upon the nature of the property insured, its condition and other circumstances existing at the time of loss.'" (Doc. No. 59 at 13 (citing *Braddock v. Memphis Fire Ins. Corp.*, 493 S.W.2d 453, 459 (Tenn. 1973)). This argument is unpersuasive because it is premised on errors of law. First, Phoenix erroneously identifies a quote from *Newark Fire Insurance Company v. Martineau*, 170 S.W.2d 927 (Tenn. Ct. App. 1943) as *Braddock's* holding. (*See* Doc. No. 59 at 13).[1] Second, the Tennessee Supreme Court has expressly rejected the argument that it adopted the broad evidence rule in *Braddock*. *See Lammert v. Auto-Owners (Mut.) Ins. Co.*, 572 S.W.3d 170, 178 (Tenn. 2019) ("this Court has never adopted the broad evidence rule. In *Braddock*, this Court merely acknowledged that the broad evidence rule and the replacement-cost-less-depreciation method both accomplished indemnity.").[2]

Turning to the "principles of indemnity" basis of Phoenix's first affirmative defense, Phoenix argues, without analysis of the terms of the Policy at issue, that the factual circumstances

---

[1] *Braddock* held that depreciation may be considered in determination of actual cash value for partial loss on account of any casualty insured against in policies issued by defendant insurers. *Id*. at 460.

[2] Phoenix also contends that Foster failed to comply with the Policy by failing to submit a Proof of Loss for actual cash value. (Doc. No. 59 at 12 (citing *Speakman v. Liberty Insurance Corp.*, 2017 WL 3671364, at *6 (E.D. Tenn. July 5, 2017) ("because Plaintiffs have failed to make any repairs to the Residence to date, they are only presently entitled to payment for the AVC of the repairs to the Residence)). In its response, Foster notes that the Policy only required it to submit an actual cash value proof of loss *after* Phoenix requested it. (Doc. No. 67 at 17). Foster argues Phoenix never requested a proof of loss from it, and that, therefore, Phoenix's argument that Foster did not comply with the Policy fails a matter of law. (*Id*.). Phoenix filed a reply but did not argue otherwise. (Doc. No. 70). The Court need not address this argument in light of the parties' agreement that Foster cannot recover the replacement cost value of the Loss. (*See* Doc. No. 67 at 8 ("Here, because Foster sold the Insured Premises after the Loss, it admittedly cannot now recover the RCV of the Loss because it cannot make the required repairs to the Insured Premises to necessary to recover RCV under the Policy."); Doc. No. 59 at 12 (arguing Foster precluded from RCV recovery because it sold the Insured Premises and does not have the ability to performs any repairs to it)).

5

of this case and "principles of indemnification" permit the Court to conclude as a matter of law that there is no loss and Foster has been fully indemnified. (*See* Doc. No. 59 at 9-11).[3] Phoenix is correct that, under Tennessee law, "insurance contracts are contracts of indemnity, meaning that the purpose of the insurance contract 'is to reimburse the insured; to restore him as nearly as possible to the position he was in before the loss.'" *Lammert*, 572 S.W.3d at 173-74 (quoting *Braddock*, 493 S.W.2d at 459-60). However, Phoenix overlooks that, under Tennessee law, "an insurance policy is a contract, and as such, [the court's] analysis must be grounded in principles of contract law." *Christenberry v. Tipton*, 160 S.W.3d 487, 492 (Tenn. 2005). Thus, the terms of an insurance contract "should be given their plain and ordinary meaning." *Garrison v. Bickford*, 377 S.W.3d 659, 664 (Tenn. 2012). Where the language of the policy is clear and unambiguous, the court must give effect to that meaning. *Id*. The policy must be construed "as a whole in a reasonable and logical manner" and the language "should be examined in the context of the entire agreement." *Id*. Additionally, the Tennessee Supreme Court has expressly recognized that "[a]n insurance policy is a contract of adhesion drafted by the insurer." *Griffin v. Shelter Mut. Ins. Co.*, 18 S.W.3d 195, 199 (Tenn. 2000) (citing *Alcazar v. Hayes*, 982 S.W.2d 845, 851 (Tenn. 1998); *Bill Brown Const. v. Glens Falls Ins.*, 818 S.W.2d 1, 12 (Tenn. 1991)). As such, under Tennessee law, courts must construe ambiguous language in an insurance policy against the insurer and in favor of the insured so as to provide coverage. *See id*. at 199-200; *see, e.g., Rudd v. Chubb Nat'l Ins. Co.*, No. 3:08-0240, 2009 WL 10692987, at *5-8 (M.D. Tenn. Mar. 11, 2009) (construing ambiguous language in insurance policy against the insurer and in favor of the insured).

---

[3] Similarly, Phoenix contends that determining the actual cost value by the replacement-cost-less-depreciation method "is legally incorrect" because it would "fail[] to take into account the principles of indemnification for the actual loss sustained by Foster." (Doc. No. 59 at 12-13).

6

As Phoenix's first affirmative defense is not grounded in the terms of the Policy at issue, it fails as a matter of law. Accordingly, the Court will not grant summary judgment on Phoenix's first affirmative defense.

2. Second Affirmative Defense

Next, Phoenix seeks summary judgment on its Second Affirmative Defense that Foster waived its right to appraisal. (*See* Doc. No. 59 at 14-15 (citing *Bard's Apparel Mfg., Inc. v. Bituminous Fire & Marine Ins. Co.*, 849 F.2d 245, 249 (6th Cir. 1988)( "[a]ny attempt on the part of either party to misuse or pervert the provisions of the policy as to an appraisal, so as to unreasonably delay an adjustment is a breach of good faith, and should be treated as a waiver of the condition.")). Here, Phoenix fails to identify any portions of the record that demonstrate the absence of a genuine dispute of material fact concerning its waiver affirmative defense. Moreover, viewing the evidence in the record in the light most favorable to the non-moving party, a reasonable jury could conclude that Foster's demand for appraisal was not an attempt to "misuse or pervert the provisions of the policy as to the appraisal." Accordingly, the Court will not grant summary judgment on Phoenix's Second Affirmative Defense.

**B. Breach of Contract**

As noted above, Phoenix, as the party bringing the summary judgment motion, has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. Here, Phoenix argues Foster does not have evidence of damages to support its breach of contract claim because Foster did not include calculation for actual cost value in its initial disclosures or responses to discovery. (Doc. No. 59 at 17 (citing Doc. Nos. 59-1, 59-2, 59-3)).[4] In its response, Foster produces its expert

---

4      To establish a breach of contract under Tennessee law, a plaintiff must show "(1) the existence of an enforceable contract, (2) non-performance amounting to a breach of the contract, and (3) damages caused

7

disclosures (Doc. No. 63-7), noting that its experts are expected to testify "that the actual cash value as stated in HailSolve's estimate accurately represents the applicable depreciation based on proper Xactimate settings." (Doc. No. 67 at 18 (quoting Doc. No. 63-7 at 4)). Phoenix does not argue otherwise in its reply. (*See* Doc. No. 70). Accordingly, Phoenix has failed to establish the absence of material disputes of fact on Foster's breach of contract claims.

**C. Declaratory Judgment**

Phoenix argues Foster's declaratory judgment claim must be dismissed as redundant of its breach of contract claim. (Doc. No. 59 at 23). In its response, Foster submits that it seeks a declaratory judgment that Phoenix is required to participate in appraisal, which is not redundant of its claims for either breach of contract or statutory bad faith. (*See* Doc. No. 67 at 20 (noting that its breach of contract claim is "based on both Phoenix's failure to properly pay under the Policy and its improper refusal to proceed to appraisal" and its statutory bad faith claim is based on "Phoenix's improper, bad-faith claims handling practices[.]") (citing Complaint, Doc. No. 1-1 at PageID # 13, 15-17)). Phoenix filed a reply but did not argue otherwise. (*See* Doc. No. 70). Accordingly, the Court will not grant summary judgment on Foster's declaratory judgment claim.

**D. Statutory Bad Faith**

"Tennessee has, for many years, had a 'bad faith refusal to pay' statute imposing increased liability on insurers who fail to process meritorious insurance claims timely and in good faith." *Eye Centers of Am., LLC v. Series Protected Cell 1*, 583 F. Supp. 3d 1105, 1112 (M.D. Tenn. 2022) (citing Tenn. Code Ann. § 56-7-105). To prevail on a bad faith claim brought under this statute, a plaintiff must establish: (1) "the policy of insurance must, by its terms, have become due and payable," (2) "a formal demand for payment must have been made," (3) "the insured must have

---

by the breached contract." *Nw. Tenn. Motorsports Park, LLC v. Tenn. Asphalt Co.*, 410 S.W.3d 810, 816–17 (Tenn. Ct. App. 2011).

waited 60 days after making [its] demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days)," and (4) "the refusal to pay must not have been in good faith." *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 360-61 (6th Cir. 2018) (quoting *Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986)).

Through its pending motion, Phoenix contends Foster cannot establish the fourth element of its statutory bad faith claim. (*See* Doc. No. 59 at 24-25). Bad faith under Section 56-7-105 is a factual determination for the jury. *Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 822 (Tenn. 2003) ("The language of this statute expressly applies to insurance companies and provides that a jury decide whether the evidence demonstrates bad faith on the part of the insurer."). Summary judgment is inappropriate on the issue of bad faith in the present case because Phoenix fails to establish the absence of material disputes of fact regarding this element. (*See, e.g.*, Doc. No. 68 ¶ 22).

### E. Punitive Damages

Under Tennessee law, punitive damages may be awarded in "egregious" cases involving breach of contract where, in addition to showing that defendant breached contract, plaintiff provides clear and convincing proof that defendant has acted either "intentionally, fraudulently, maliciously, or recklessly." *Lindenberg*, 912 F.3d at 362 (citing *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 211 n.14 (Tenn. 2012)). The question of whether punitive damages are available is nearly always one for the jury. *Id*. at 365 (citing *Se. Greyhound Lines, Inc. v. Freels*, 144 S.W.2d 743, 744 (Tenn. 1940)); *accord Riad v. Erie Ins. Exch.*, 436 S.W.3d 256, 276 (Tenn. Ct. App. 2013) (finding that the question of whether punitive damages were appropriate in a bad faith breach of insurance contract case was properly submitted to the jury). Phoenix also fails to demonstrate

9

the absence of material disputes of fact as to punitive damages. Accordingly summary judgment will not be granted as to punitive damages.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE